MR. JACKSON PHILLIP MOSLEY
1923 9th Street NW, Unit 5
WASHINGTON, DC 20001
703-395-1596

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JACKSON PHILLIP MOSLEY,<br><br>1923 9th STREET, NW, UNIT 5<br><br>WASHINGTON, DC 20001,<br><br>Plaintiff,<br><br>vs.<br><br>MONEYLION INC.<br><br>OF<br><br>30 WEST 21ST STREET,<br><br>9TH FLOOR<br><br>NEW YORK, NY 10010<br><br>AND OF<br><br>8610 S SANDY PARKWAY<br><br>SANDY, UT 84070<br><br>Defendant | ***JURY TRIAL DEMANDED***<br><br>Case No.: No. _____<br><br>JACKSON PHILLIP MOSLEY v. MONEYLION INC.<br><br>Case: 1:21−cv−00894 JURY DEMAND<br>Assigned To : Chutkan, Tanya S.<br>Assign. Date : 3/25/2021<br>Description: Pro Se Gen. Civ. (F−DECK) |

**INTRODUCTION**

1. Jurisdiction of this court is founded on District of Columbia Code, Title 13 (§ 13–423), which states

that a District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent,

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

15 as to a claim for relief arising from the person's transacting any business in the District of Columbia, and the

16 plaintiff residing in the District of Columbia at the time the suit is filed;

17    2. Plaintiff alleges that on or about April of 2018, Plaintiff joined Defendant's advertised "credit builder"

18 program, and opened, paid, and closed a series of $500 "credit builder loans" with Defendant for the purposes of

19 strengthening his credit, in preparations for obtaining a mortgage. Defendant would "loan" members $500 at a time,

20 with a term of 12 months, and Defendant would automatically withdraw small payments for the loan, on a monthly

21 basis, to pay the hypothetical loan. Plaintiff always paid the accounts on-time, paid off the accounts early, and never

22 encountered financial instability that would prevent him from repaying the hypothetical obligation. In October of

23 2018, Plaintiff opened another $500 loan after paying off the previous loan. Plaintiff paid on the loan, but each time

24 he would pay through the phone application, which is the only way the account could be paid, the Defendant's

25 technology would process the payment and then refuse to credit the account. While the amount was taken from

26 Plaintiff's checking account successfully, the amount was never credited to the loan. The amount paid would be

27 subsequently returned to Plaintiff's account, but it left the loan unpaid. Plaintiff attempted to reach customer service

28 multiple times in attempt to report the technical glich and ask how to resolve the issue and make payments on the

29 loan. Despite Plaintiff reaching out by email five times in one month, he never received a reply. He finally found the

30 phone number of Defendant, which is not readily published, within their "privacy policy" documents on Defendant's

31 website. Plaintiff would call and wait on-hold with an automated system for 30 minutes or more, which he repeated

32 multiple times, for the system to ultimately play a message indicating that no customer service agents were available

33 at this time and to please call back later. After 30 days elapsed, Plaintiff noticed that his credit score dropped nearly

34 100 points because Defendant has reported the account as past due by 30 days. Plaintiff, in a panic, reached out

35 again to Defendant using a different phone number listed on his credit report. The phone number would result in a

36 message indicating that the line was disconnected. In researching his situation online, Plaintiff noticed a trend of

37 eerily similar situations occurring, with no response from Defendant. In fact, a class-action suit against Defendant

38 was filed in California for similar negligence. Plaintiff disputed the item on his credit report directly with the major

39 credit bureaus, and Defendant would report that the account was accurate each time. Plaintiff continued attempts to

40 reach out to Defendant to no avail, even writing letters and mailing them to any addresses for the Defendant that

41 Plaintiff could find. The account continued to go past due, reporting late each month and having a highly negative
42 impact on Plaintiff's credit rating. What started as Plaintiff's desire to improve and build his credit rating, was now
43 resulting in a total backfire scenario for which Plaintiff could not find a way out. Ultimately the account in question
44 was closed, Plaintiff was locked out of the mobile app–the only way to access the account–and the account was
45 listed as "in collection" on his credit report. After disputing the account with the major credit bureaus multiple
46 times, Experian and Transunion ultimately sided with Plaintiff, permanently removing the negative information
47 because Defendant failed to provide proper documentation that justified the negative reporting. Credit bureau,
48 Equifax, continued to instruct Plaintiff to reach out to Defendant with questions about the account. Plaintiff
49 continued to do so with no response. Over the past two years since the account was opened with Defendant, Plaintiff
50 has reached out 14 times via phone (which ended in ultimately being disconnected), 167 times via email, 15 times
51 via first class mail, and once via Certified Mail with no response, despite the mail being reported by USPS as
52 delivered. Upon Plaintiff's last attempt to reach Defendant on July 16th, 2020, Defendant finally received an answer
53 by phone. Plaintiff spoke with representative Jessica, who was able to locate a series of paid-in-full and closed loans,
54 but no loans that were negative or in collection. Plaintiff provided the loan number ending in 3363 (as reported by
55 the credit bureaus), and Defendant's representative informed Plaintiff that the search for that loan number returned
56 no results. Plaintiff asked for the call to be escalated, and Defendant's representative said that she would escalate the
57 call in their system, and that someone would call Plaintiff back within three business days. That call never happened.
58 On August 20th, 2020, Plaintiff called Defendant again. After sitting on a variety of holds for nearly 90 minutes, and
59 then, yet again, calmly explaining the situation 6 times to 5 different representatives, Plaintiff was finally spoke with
60 Carissa (refused to provide last name or employee ID number), allegedly a supervisor. Plaintiff calmly explained,
61 once again, the entire situation, and Carissa was EXTREMELY rude and dismissive from the start. Plaintiff verified
62 with the supervisor that the balance which was reporting to my credit report in the amount of $500 was incorrect,
63 and that the correct balance was $178. Plaintiff inquired as to why it was listed as a $500 balance, and Carissa
64 informed Plaintiff that if they keep it as the original balance until the full balance is paid off, it has a bigger impact
65 on the consumer's credit, which encourages them to pay more quickly. Yet another blatant violation of FDCPA.
66 Plaintiff offered to pay the balance in-full in the amount of $178—even though no one at Moneylion had ever

67  attempted to contact Plaintiff regarding an outstanding balance or otherwise, and Carissa declined, informing
68  Plaintiff that he had to make the payment through the app. Plaintiff informed her, yet again, that he was locked out
69  of the app and payments wouldn't be accepted from any other account outside of a closed USAA checking account.
70  Plaintiff demanded the issue be resolved, or that it otherwise be escalated to a higher supervisor that could resolve it.
71  The fact remains that Plaintiff was always willing to pay the loan, and was always capable of paying the loan, yet
72  Defendant's half-baked technologies and unfair practices prevented him from doing so or even informing him that
73  there was any balance due. Plaintiff should not be subject to negative reporting on his credit reports simply due to
74  the errors and shortcomings of the Defendant. After nearly an hour of back-and-forth on the phone with Carissa, the
75  Supervisor said "I'm the highest supervisor on staff, and I refuse to remove the account from your report—you have
76  no other options and that's that. Goodbye, Mr. Mosley," and violently disconnected the call. Plaintiff has the entire
77  phone call fully recorded and can submit it to the courts upon request. Since that call, the account has been updated
78  on Plaintiff's credit report to reflect only a $178 balance due on a charged-off account, despite Plaintiff finally
79  paying the $178 through a tech support representative that forcefully deleted the old account from Mosley's app
80  dashboard, and replaced it with his new account details. This is yet another horrible display of inaccurate record
81  keeping that greatly impact's Plaintiff's score, but also many impacted consumers everywhere. Defendant's
82  negligence in maintaining detailed records, failure to be responsive to Plaintiff's queries or contactable, combined
83  with the nonchalant behavior in response to such a serious matter, have resulted in Plaintiff being perceived as
84  untrustworthy and unreliable, both as a borrower of credit and as a potential employee. It has resulted in Plaintiff
85  being denied a Public Trust Clearance, subsequently preventing Plaintiff from accepting a job he very much wanted
86  that would have furthered his career. Further, his FICO rating has caused Plaintiff to be unfairly subjected to
87  unfavorable terms for financial and insurance accounts, and a denial of a mortgage loan, which was Plaintiff's initial
88  goal, due to Defendant's claims that Plaintiff is an untrustworthy borrower. Defendant continues to report to Equifax
89  each month as a collection account which continues to impact his credit standing. Exhausted with the situation,
90  which has now elapsed nearly 3 years since the initial opening of the account, 2019, Plaintiff has been left with no
91  other recourse than to file this legal action in order to be able reach Plaintiff's immediate goal of purchasing a home
92  prior to his current apartment lease expiration. This complaint serves as Plaintiff's last resort for seeking relief from

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

the Defendant's previous and ongoing negligence. Plaintiff is an upstanding citizen, graduated top of his class from American University, and has countless references proving his character. However, in a world highly dependent on Plaintiff's credit rating, he is perceived in a highly negative light by potential banks, insurance companies, employers, and all other parties seeking credit bureau reports and background checks.

**THE FAIR CREDIT REPORTING ACT**

25. The FCRA was enacted in 1970 and became effective on Apri125, 1971, and has been in force since that date. In 1996, the FCRA was amended extensively by Congress. Among other things, Congress added Section 623 of the Act, which became effective on October 1, 1997.

26. Section 621 of the FCRA, 15 U.S.C. § 1681s, authorizes the Commission to use all of its functions and powers under the FTC Act to enforce compliance with the FCRA by all persons subject thereto except to the extent that enforcement specifically is committed to some other governmental agency, irrespective of whether the person is engaged in commerce or meets any other jurisdictional tests set forth by the FTC Act.

27. For purposes of Section 623(a)(7) of the FCRA, 15 U.S.C. § 1681s-2(a)(7), "negative information" means "information concerning a customer's delinquencies, late payments, insolvency, or any form of default," 15 U.S.C. § 1681s-2(a)(7)(G)(i), and the terms "financial institution" and "customer" have the same meanings as in Section 509 Public Law 106-102, 15 U.S.C. § 6809(3). 15 U.S.C. § 1681s-2(a)(7)(G)(ii).

**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**

**COUNT I**

**Violations of Section 623(a)(1)(A)**

28. Section 623(a)(1)(A) of the FCRA prohibits furnishers of information to consumer reporting agencies from furnishing any information relating to a consumer to any consumer reporting agency if the furnisher knows or has reasonable cause to believe that the information is inaccurate. 15 U.S.C. § 1681s-2(a)(I)(A).

29. Defendant has furnished such information while knowing or having reasonable cause to believe that the information was inaccurate. Defendant has access to systems which display each tradeline being reported for each

individual consumer. It is clear that Defendant has been negligent in auditing their records as they relate to Plaintiff.

30. The acts and practices alleged in Lines 17-96 constitute violations of Section 623(a)(l)(A) of the FCRA, 15 U.S.C. §168Is-2(a)(l)(A). Pursuant to Section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(l), the acts and practices alleged in Lines 17-96 also constitute unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II

### Violations of Section 623(a)(7)

31. Section 623(a)(7) of the FCRA requires that, if any financial institution that extends credit to customers and regularly and in the ordinary course of business furnishes information to a consumer reporting agency furnishes negative information about a customer to a consumer reporting agency, the financial institution shall provide the customer with a clear and conspicuous written notice about the furnishing of such negative information no later than thirty days after the financial institution furnishes the negative information to the consumer reporting agency. 15 U.S.C. § 1681s-2(a)(7).

32. MoneyLion Inc. is a "financial institution" with "customers" as defined by Section 623(a)(7)(G)(ii) of the FCRA, 15 U.S.C. § 1681s-2(a)(7)(G)(ii).

33. MoneyLion Inc. furnishes "negative information" about its customers regarding credit extended to customers to consumer reporting agencies as "negative information" is defined in Section 623(a)(7)(G)(i) of the FCRA, 15 U.S.C. § 1681s-2(a)(7)(G)(i).

34. Not only has MoneyLion Inc. furnished negative information about Plaintiff to consumer reporting agencies on multiple occasions, Defendant has also reported the account in question while never providing Plaintiff with the written notice required by Section 623(a)(7) upon furnishing the negative information to the consumer reporting agencies, and much less within the prescribed 30 days.

35. The acts and practices alleged in Lines 17-96 constitute violations of Section 623(a)(7) of the FCRA, 15 U.S.C. §1681s-2(a)(7). Pursuant to Section 621(a)(I) of the FCRA, 15 U.S.C. § 1681s(a)(l), the acts and practices alleged in Lines 17-96 also constitute unfair or deceptive acts or practices in violation 15 U.S.C. § 45(a).

## COUNT III

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**Violations of Section 623(b)(1)**

36. Section 623(b) of the FCRA requires furnishers of information to consumer reporting agencies to conduct a reasonable investigation when the furnisher receives a notice of dispute regarding the completeness or accuracy of the reported information from a consumer reporting agency in accordance with the provisions of Section 611(a)(2) of the FCRA, 15 U.S.C. § 1681i, and to report the results of the investigation to the consumer reporting agency. 15 U.S.C. § 1681s-2(b).

37. In multiple incidents, as described in Lines 17-96, a notice of dispute from a consumer reporting agency was submitted to Defendant, as required. Defendant has failed to provide the detailed results and required evidence of any investigation to Plaintiff by way of standard procedure and upon multiple proactive requests by Plaintiff.

38. The acts and practices alleged in Lines 17-96 constitute violations of Section 623(b) of the FCRA, 16 U.S.C. § 1681s-2(b). Pursuant to Section 621 (a)(l) of the FCRA, 15 U.S.C. § 1681s(a)(l), the acts and practices alleged in Paragraph 71 also constitute unfair acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**CIVIL PENALTIES FOR VIOLATIONS OF THE FCRA**

39. Section 621 (a)(2)(A) of the FCRA, 15 U.S.C. § 1681s(a)(2)(A), authorizes the Court to award monetary civil penalties in the event of a knowing violation, which constitutes a pattern or practice of violations. MoneyLion Inc.'s violations of Sections 623(a)(7) and 623(b) of the FCRA, as alleged in this Complaint, were knowing and constituted a pattern or practice of violations. As specified by the Federal Civil Penalty Inflation Adjustment Act of 1990, 28 U.S.C. § 2861, as amended, the Court is authorized to award a penalty of not more than $3,500 per violation for violations occurring on or after February 10, 2009,

40. Each instance in which Defendant has failed to comply with the FCRA in one or more of the ways described above constitutes a separate violation of the FCRA for the purpose of assessing monetary civil penalties under section 621 of the FCRA. Plaintiff seeks monetary civil penalties for every separate violation of the FCRA.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, pursuant to 15 U.S.C. §§ 45(m)(1)(A), 53(b), 1692/, 1681s, and the Court's own equitable powers, respectfully requests that the Court:

1) Immediately take action commanding Defendant to delete the following errant information on the report maintained by Equifax:

   a) Loan reported by Defendant, appearing as "MoneyLion, Inc," with account number beginning in LLI42, and ending in 3363, with an account open date of 10/2018, original loan amount of $500, with current status as "in collection," and a balance of $178. Full account number, as listed by the credit bureau, is available upon request.

   b) Removal of all Plaintiff's liability for the account in question.

2. Award such relief as the Court finds necessary to redress the undue emotional injury and stress to Plaintiff resulting from Defendant's violations of the FTC Act and, specifically, the Fair Credit Reporting Act, including but not limited to restitution and the full waiver of any alleged debts,

3. Award Plaintiff monetary civil penalties for each violation of the FCRA as alleged in this Complaint in the amount of Ten Thousand Five-Hundred dollars ($10,500); and

4. Award Plaintiff all costs of bringing this action for which detailed receipts can be produced for the court, as well as such other and additional relief as the Court may determine to be just and proper.

It goes without saying that large banks and corporations like MoneyLion, Inc., routinely take advantage of prose litigants as opposed to genuinely addressing valid concerns. Inasmuch, it can be expected that MoneyLion's counsel will likely file for a Dismissal with Prejudice for the case for some reason related to Plaintiff not fully understanding or being able to comply with the rules of procedure. Likely Defendant will response stating that Plaintiff did not state a claim for which relief may be granted. This is just yet another sleezy move of overly capitalistic corporations choosing to not own up to their mistakes but attempt to weasel their way out. Plaintiff, as a pro se litigant, prays that the court interpret his case in the plain meaning, and express genuine concern for the injustices of the Defendant. This is a serious matter that affects real consumers, like Plaintiff, every single day. It is unfair that upstanding citizens be subjected to such a horrible image when they have done no wrong. I pray that the

197  court will take that into account, and that council for Defendant will analyze their own moral compass prior to being

198  complicit in corporate America's irresponsible capitalism.

199

Respectfully Submitted this 25th day of March 2021

| | |
|---|---|
| | MR. JACKSON PHILLIP MOSLEY<br>1923 9th Street NW, Unit 5<br>WASHINGTON, DC 20001 |